**BELL ATLANTIC TELEPHONE COMPANIES, et al.,
Petitioners,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents,**

**AT&T Corporation, et al., Intervenors.**

No. 97–1432.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 19, 1997.

Decided Dec. 23, 1997.

Mark L. Evans argued the cause for petitioners, with whom Michael K. Kellogg, Washington, DC, Sean A. Lev, Washington,

DC, James R. Young, Michael E. Glover, Arlington, VA, and Edward Shakin, Arlington, VA, were on the briefs.

John E. Ingle, Washington, DC, Deputy Associate General Counsel, Federal Communications Commission, argued the cause for respondents, with whom Joel I. Klein, Washington, DC, Acting Assistant Attorney General, U.S. Department of Justice, William E. Kennard, General Counsel at the time the brief was filed, Federal Communications Commission, Christopher J. Wright, Spokane, WA, Deputy General Counsel at the time the brief was filed, Laurel R. Bergold, Washington, DC, Counsel, Catherine G. O'Sullivan, Washington, DC and Nancy C. Garrison, Washington, DC, Attorneys, U.S. Department of Justice, were on the brief.

Anthony C. Epstein, Washington, DC, argued the cause for intervenors MCI Telecommunications Corporation, et al., with whom Mark C. Rosenblum, Basking Ridge, NJ, David W. Carpenter, Peter D. Keisler, Washington, DC, Leon M. Kestenbaum, Washington, DC, Charles C. Hunter, Catherine M. Hannan, Bowie, MD, and Richard S. Whitt were on the brief. Jay C. Keithley, Washington, DC, entered an appearance.

James D. Ellis, Robert M. Lynch, Patricia Diaz Dennis, San Antonio, TX, David F. Brown, Randall E. Cape, San Francisco, CA, Patricia L.C. Mahoney, San Francisco, CA, Martin E. Grambow, Washington, DC, Durward D. Dupre, St. Louis, MO, and Mary W. Marks were on the statement in lieu of brief, filed on behalf of intervenors SBC Communications Inc., et al.

Before: EDWARDS, Chief Judge, TATEL, Circuit Judge and BUCKLEY, Senior Circuit Judge.

Opinion for the Court filed by Chief Judge EDWARDS.

EDWARDS, Chief Judge:

This case arises from a challenge to an Order of the Federal Communications Commission ("Commission") construing a poorly drafted section of the Telecommunications Act of 1996, enacted as 47 U.S.C. § 272. Under the statute, there are two potentially contradictory edicts: first, § 272(a) states that, normally, a Bell Operating Company ("BOC") may not provide origination of most communications services between Local Access and Transport Areas ("interLATA services") except through a separate affiliate; second, § 272(e)(4) states that a BOC "may provide any interLATA ... facilities or services to its interLATA affiliate if such services or facilities are made available to all carriers at the same rates." At first blush, the second provision appears to give back what the first section takes away, i.e., a BOC's ability to provide interLATA origination services in a physically integrated network with its local exchange services. To avoid such an anomalous result, the Commission interpreted § 272(e)(4) to mean that a BOC may provide any interLATA services *"it is otherwise authorized to provide,"* so long as it provides them on a non-discriminatory basis. Second Order on Reconsideration, *Implementation of the Non–Accounting Safeguards of Sections 271 and 272 of the Communications Act of 1934, as Amended,* 12 FCC Rcd. 8653, 8675 (1997).

Petitioners, the BOCs, argue that the plain meaning of § 272(e)(4) precludes the Commission's interpretation, because the literal meaning of the words "may provide any" operates as an unrestricted affirmative grant of authority for them to deliver integrated interLATA services. This argument confuses "plain meaning" with literalism. The meaning of a statutory provision is its use in the context of the statute as a whole. Here, the language of § 272(e)(4) cannot yield the purported plain meaning advanced by Petitioners, because that meaning would produce marked inconsistencies with § 272(a) and so would violate the context of the statute. Because we find the statute ambiguous and the Commission's interpretation reasonable, we deny the petition for review.

## I. BACKGROUND

The Telecommunications Act of 1996 ("Act") superseded the consent decree, or "Modification of Final Judgment," that governed the telecommunications industry after the break-up of the AT&T monopoly and the emergence of the regional BOCs. The Act

aimed to foster competition at all levels of the industry, including local exchange and interLATA services. In the jargon of the Act, a LATA is bigger than a local exchange and smaller than a region. This case concerns interLATA services, that is, long distance service between any two LATAs, originating within the BOC's service region. InterLATA services represent a significant and sought-after segment of the telecommunications market.

Section 271 of the Act gives the basic framework for BOC provision of interLATA services; a BOC may not deliver interLATA services not authorized therein. 47 U.S.C. § 271(a). The section permits a BOC or its affiliate to provide interLATA services originating inside the states in which the consent decree authorized the BOC to provide wireline services ("in-region states") only with express Commission approval. § 272(b)(1). The approval depends upon several factors, including the requirements of § 272. Commission approval is not required for services originating outside the states in which the consent decree authorized the BOC to provide wireline service, § 272(b)(2), or for so-called incidental interLATA services, § 272(b)(3).

The section in question in this case, 47 U.S.C. § 272, creates a separate affiliate requirement for specified BOC activities. It begins with the heading "In General," under which it specifies that a BOC may not provide certain services "unless it provides [the services] through one or more [separate] affiliates." § 272(a)(1). One of those services requiring provision through a separate affiliate is "[o]rigination of interLATA communications services," with three minor exceptions. § 272(a)(2)(B). The exceptions include incidental interLATA services and interLATA services that originate outside the area in which the BOC was authorized to provide wireline services under the consent decree. § 272(a)(2)(B)(ii). The result is that § 272(a) permits a BOC to provide inregion interLATA origination services only so long as it provides them "through" a separate affiliate. The requirements of separateness, which include independent operations and management, as well as arm's

length dealings, are set out in § 272(b). The separate affiliate requirement ceases to apply four years after the Act goes into force. § 272(f)(2).

The interpretive difficulty seen in this case arises because of a subsection headed "Fulfillment of Certain Requests," § 272(e). This subsection first lays out several non-discrimination requirements for a BOC: a BOC must respond to non-affiliate service requests in the same time it does to affiliates, § 272(e)(1); must provide the same facilities to all, § 272(e)(2); and must charge an affiliate at least as much as a non-affiliate, § 272(e)(3). The last portion of the subsection states that a BOC

> may provide any interLATA or intraLATA facilities or services to its interLATA affiliate if such services or facilities are made available to all carriers at the same rates and on the same terms and conditions, and so long as the costs are appropriately allocated.

§ 272(e)(4).

The language of § 272(e)(3) indicating that a BOC may provide "any" interLATA services to its affiliate so long as it meets the non-discrimination requirement arguably differs from the requirement of § 272(a) that a BOC may only originate in-region interLATA service through a separate affiliate. In other words, the literal language of § 272(e)(4), read alone, seems to grant a BOC the right to engage in direct provision of "any" interLATA services. So construed, § 272(e)(4) would permit a physically integrated interLATA-local exchange system.

In its First Report and Order, the Commission concluded that § 272(e)(4) was not intended to undercut § 272(a)(2), but merely required non-discrimination for any interLATA services that a BOC *was otherwise authorized to provide*. First Report and Order, *Implementation of the Non–Accounting Safeguards of Sections 271 and 272 of the Communications Act of 1934, as Amended*, 11 FCC Rcd. 21905, 22032 (1996). Petitioners challenged the Commission's interpretation before this court, arguing that the plain meaning of § 272(e)(4) expressly permitted physically integrated interLATA services. At the Commission's request, the court re-

manded for the Commission to consider the plain meaning argument advanced by the BOCs. *Bell Atlantic Telephone Cos. v. FCC,* No. 97–1067, 1997 WL 307161 (D.C.Cir. Mar. 31, 1997). On remand, the Commission acknowledged the tension between § 272(e)(4) and § 272(a)(2), but rejected the BOCs' plain meaning argument, and reconfirmed its ruling in a detailed exposition. *See* 12 FCC Rcd. at 8665. The BOCs now challenge the Commission's interpretation of the statute as unlawful.

## II. ANALYSIS

### A. *Chevron* Step One

■ *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), governs review of agency interpretation of a statute which the agency administers. Under the first step of *Chevron,* the reviewing court "must first exhaust the 'traditional tools of statutory construction' to determine whether Congress has spoken to the precise question at issue." *Natural Resources Defense Council, Inc. v. Browner,* 57 F.3d 1122, 1125 (D.C.Cir.1995) (quoting *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2782 n. 9). The traditional tools include examination of the statute's text, legislative history, and structure, *see Southern California Edison Co. v. FERC,* 116 F.3d 507, 515 (D.C.Cir.1997); as well as its purpose, *see First Nat'l Bank & Trust v. National Credit Union,* 90 F.3d 525, 529–30 (D.C.Cir.1996). This inquiry using the traditional tools of construction may be characterized as a search for the plain meaning of the statute. If this search yields a clear result, then Congress has expressed its intention as to the question, and deference is not appropriate. *See Hammontree v. NLRB,* 894 F.2d 438, 441 (D.C.Cir.1990). If, however, "the statute is silent or ambiguous with respect to the specific issue," *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782, Congress has not spoken clearly, and a permissible agency interpretation of the statute merits judicial deference. *Id.*

■ The first traditional tool of statutory construction focuses on the language of the statute. *See Bailey v. U.S.,* — U.S. —, ——, 116 S.Ct. 501, 506, 133 L.Ed.2d 472

(1995). Petitioners argue that the language of § 272(e)(4), according to which a BOC "may provide any interLATA or intraLATA facilities or services to its interLATA affiliate" if the BOC does so non-discriminatorily, amounts to an express textual grant of authority sufficient to illustrate congressional intent. They therefore would have us decide that the plain meaning of the statute precludes *Chevron* deference. However, textual analysis is a language game played on a field known as "context." The literal language of a provision taken out of context cannot provide conclusive proof of congressional intent, any more than a word can have meaning without context to illuminate its use. In short, "the meaning of statutory language, plain or not, depends on context." *Bailey,* — U.S. at ——, 116 S.Ct. at 506 (citations omitted). Although Petitioners rely on the expansive character of the word "any," the Supreme Court has specifically held that in context the word "any" may be construed in a non-expansive fashion. *See O'Connor v. U.S.,* 479 U.S. 27, 31, 107 S.Ct. 347, 350, 93 L.Ed.2d 206 (1986) (Scalia, J.) (statutory context showed that unmodified phrase "any taxes" included only taxes of Republic of Panama).

Context serves an especially important role in textual analysis of a statute when Congress has not expressed itself as univocally as might be wished. Where, as here, we are charged with understanding the relationship between two different provisions within the same statute, we must analyze the language of each to make sense of the whole. A comparison between the words of § 272(e)(4) and those of (a)(2) reveals several ambiguities. Those ambiguities lead us to the conclusion that the words of § 272(e)(4) do not, on their own, provide a plain meaning that captures Congress' intent.

The gravest problem with Petitioners' plain meaning argument is that if the words of § 272(e)(4) are read as an independent, affirmative grant of authority, they vitiate § 272(a)(2). Section 272(a)(2) permits a BOC to provide inregion interLATA origination services only through a separate affiliate. Yet, § 272(e)(4) acknowledges no limitation on provision of interLATA services except

non-discrimination. Thus, at the level of literal language there exists a potential contradiction between the two provisions sufficient to preclude the possibility that the plain meaning is the one urged by Petitioners.

Petitioners attempt to resolve the apparent inconsistency in the statute by claiming that § 272(a)(2) permits provision of interLATA services by a BOC *through* a separate affiliate, while § 272(e)(4) permits provision of all interLATA services *to* an affiliate, and then requires that if a BOC does provide interLATA services to an affiliate, it must make the services available to all other carriers on the same terms as a condition of its provision of services. This interpretation fails to convince on its own terms, and certainly does not suffice to constitute the plain meaning of the statute. On Petitioners' interpretation, § 272(e)(4) grants nothing that § 272(a)(2) does not already grant, but merely adds a non-discrimination provision. The non-discrimination provision, for its part, would appear to have no application, because under § 272(a)(2) a BOC may only provide in-region interLATA origination services through an affiliate, not to anyone else. If Congress had intended what Petitioners now claim, § 272(e)(4) would have been unnecessary.

Furthermore, the inconsistency between § 272(a)(1), which permits provision of interLATA services "through" an affiliate, and § 272(e)(4), which speaks of services delivered "to" an affiliate, constitutes an independent source of ambiguity in the statute. It is simply unclear why Congress would have used a different preposition in each of the two provisions to describe what would presumably be an identical business relationship. A further source of ambiguity lies in the statute's use of the words "any ... services" in § 272(e)(4). The statute provides no guidance as to whether this term comprehends simply the list of services set down at § 272(a)(2) as requiring a BOC affiliate, or some larger list. These two ambiguities each stand in the way of Petitioners' claim that the statute's plain textual meaning permits provision of interLATA services on an unrestricted basis. They contribute to our conclusion that this opaquely drafted statute cannot be said to possess the plain meaning urged upon us.

The Petitioners claim that the history, structure, and underlying policy purpose of the statute similarly yield the purported plain meaning they support, but this is not so. The formal legislative history is silent on the meaning of § 272(e)(4), which was introduced as part of the Managers' Amendment to the Act. 141 CONG. REC. S8574 (daily ed. June 16, 1995). Petitioners advance two letters written by their lobbyists before the reporting of an unpassed predecessor bill in a previous Congress, J.A. 391, 394, but these unofficial, self-serving tokens carry little or no weight and are in any case inconclusive. The structure of § 272 is also inconclusive. Although placement of a provision may indicate congressional intent, *see Bailey,* —— U.S. at ——, 116 S.Ct. at 506, the fact that § 272(e)(2), (3), and (4) all loosely relate to non-discrimination does not offer any support to Petitioners' reading.

Finally, the policy basis of § 272 cannot be said to support Petitioners for the simple reason that Petitioners and the Commission advance opposing plausible theories of the intended policy of the statute, each of which corresponds to its proponent's respective preferred reading. Petitioners argue that the relevant portions of the statute seek to deregulate interLATA services expeditiously in order to take advantage of economies that will derive from physically integrated interLATA services. The Commission maintains to the contrary that the purpose of § 272(a)(2) is to prevent the BOCs from gaining an unfair competitive advantage in the interLATA market by exploiting those very same economies to the detriment of potential competitors. Because Petitioners do not provide any independent evidence to show that Congress favored the policy they advance as the basis for the statute, they cannot rely on that supposed policy to establish the plain meaning of the statute. Petitioners' plain meaning arguments accordingly fail.

### B. *Chevron* Step Two

Having concluded that the statute is ambiguous, we turn next to the Commission's interpretation. Pursuant to the second step

of *Chevron*, we will defer to the Commission's interpretation if it is reasonable and consistent with the statutory purpose and legislative history. *See Troy Corp. v. Browner*, 120 F.3d 277, 285 (D.C.Cir.1997) (agency interpretation must be "reasonable and consistent with the statutory purpose"); *Cleveland, Ohio v. U.S. Nuclear Regulatory Comm'n*, 68 F.3d 1361, 1367 (D.C.Cir.1995) (agency interpretation must be "reasonable and consistent with the statutory scheme and legislative history"). We will not uphold an interpretation "that diverges from any realistic meaning of the statute." *Massachusetts v. Dep't of Transp.*, 93 F.3d 890, 893 (D.C.Cir.1996). We note that step two of *Chevron* requires us to evaluate the same data that we also evaluate under *Chevron* step one, but using different criteria. Under step one we consider text, history, and purpose to determine whether these convey a plain meaning that *requires* a certain interpretation; under step two we consider text, history, and purpose to determine whether these *permit* the interpretation chosen by the agency. *Cf. id.* (step two inquiry "depends on the nature and extent of the ambiguity" identified in step one).

We also find in the statute an implicit delegation of interpretive authority to the Commission. This result is critical to our analysis, for it is only legislative intent to delegate such authority that entitles an agency to advance its own statutory construction for review under the deferential second prong of *Chevron. See Chevron*, 467 U.S. at 843–44, 104 S.Ct. at 2781–83. "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority.... Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* The requisite legislative intent may be inferred when, as here, resolution of an interpretive question turns on the reconciliation of competing statutory purposes. *See id.* at 865, 104 S.Ct. at 2792–93; *City of Kansas City, Mo. v. HUD*, 923 F.2d 188, 191–92 (D.C.Cir.1991). By declining itself to strike an exact balance between the

commands of § 272(a)(2) and § 272(e)(4), Congress implicitly delegated to the Commission the authority to accommodate the interests at stake through its own interpretation of the statute.

The Commission's interpretation here is reasonable and consistent with the statute's legislative history and purpose. According to the Commission, § 272(e)(4) attaches a nondiscrimination requirement to a BOC's provision of interLATA services that it is *otherwise authorized to provide*. The language stating that a BOC "may provide any ... interLATA services" if it does so in a non-discriminatory manner therefore means that a BOC may provide interLATA service only if it provides the service non-discriminatorily.

This reading of § 272(e)(4) infers the existence of a qualifying phrase not expressed within the language of the provision. However, the inference is reasonable because it gives meaning and vitality to the provision. As noted above, if § 272(e)(4) were an independent grant of authority, it would contradict § 272(a)(2). It is reasonable for the Commission to read § 272(e)(4) as a nondiscrimination requirement in order to avoid this contradiction. As for vitality, § 272(e)(4) applies both to interLATA and intraLATA services, so that even if a BOC may provide the interLATA services authorized by § 272(a) only to affiliates, the nondiscrimination provision would still apply to intraLATA services that the BOC may provide to other customers. What is more, after the sunset of § 272(a)(2), BOCs will be permitted to offer all interLATA services to other customers, but a BOC may still choose to maintain its affiliate even though not required by law to do so. When such conditions obtain, § 272(e)(4) will still apply to the BOCs and will require them to provide services non-discriminatorily. Thus, even if § 272(e)(4) has no vitality when applied to interLATA services at present, the provision will possess vitality in the near future.

As observed above, the legislative history of the statute is inconclusive. The Commission's interpretation is therefore not inconsistent with it. Finally, the Commission's inter-

pretation of the statute is consistent with what may well be the policy purpose of the statute: preventing the BOCs from entering the interLATA origination market except through affiliates until the sunset of § 272(a)(2).

Because the Commission's interpretation of the ambiguous statute is reasonable and consistent with the statute's history and purpose, we must defer to its judgment.

### III. Conclusion

For all of the foregoing reasons, the petitions for review are hereby denied.

*So ordered.*